United States District Court
Southern District of Texas
**ENTERED**
March 09, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATRICIO ESTRADA, §
§
      Plaintiff, §
§
VS. § CIVIL ACTION NO. H-19-3883
§
TROY NEHLS, *et al*, §
§
      Defendants. §

## MEMORANDUM AND ORDER

Plaintiff Patricio Estrada (Fort Bend Inmate #P00095638; TDCJ #02089041) is currently confined in Fort Bend County Jail ("Jail").[1] He alleges that in October and November 2018, officials at the Jail failed to protect him from another inmate, denied him medical treatment in connection with a fight he had with that inmate, and violated his constitutional rights in connection with his disciplinary case and placement in administrative segregation. Estrada filed an Amended Complaint (Doc. No. 10) and a More Definite Statement (Doc. No. 19), which constitute the live pleadings in this case.[2] Because he is an inmate who proceeds *in forma*

---

[1] Estrada has been confined at the Jail on at least two separate occasions, with a period of incarceration at the Texas Department of Criminal Justice ("TDCJ") in between. From March 23, 2018 until September 2019, he was confined at the Jail on a bench warrant; from September 2019 to February 2020, he in custody of the TDCJ because he is serving a sentence for aggravated sexual assault of a child under age 14; and from February 2020 to the present, he returned to the Jail from TDCJ after being re-indicted in Fort Bend County cause number 17-DCR-077672 for failure to comply with sex offender registration requirements. Doc. No. 19 at 1; *see Estrada v. Nehls*, Civ. A. No. H-19-3528 (S.D. Tex. 2019) (explaining that Estrada was then in custody of the TDCJ pursuant to a conviction in Harris County case number 1404467 that he obtained in 2016 after his deferred adjudication was revoked, and he was sentenced to 12 years' imprisonment at that time); *see also Estrada v. State*, No. 14-17-00410-CR, 2018 WL 5914504 (Tex. App.—Houston [14th Dist.] Nov. 13, 2018, pet. ref'd) (affirming Estrada's conviction).

[2] Estrada's live pleadings (Doc. Nos. 10 & 19) supersede his Original Complaint (Doc. No. 1). The claims alleged in his live pleadings, which concern the October 27, 2018 altercation and subsequent medical treatment or lack thereof, are considered here. *See* Doc. No. 52 at 2-3 (denying request to add numerous unrelated claims and new parties).

*pauperis,* the Court is required by the Prison Litigation Reform Act (the "PLRA") to scrutinize the complaint and dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

Estrada names the following defendants in his live pleadings: Fort Bend County Sheriff Troy Nehls ("Nehls"), Sergeant William Pailes ("Pailes"), Deputy Chris Owens ("Owens"), Deputy Richard Erivo ("Erivo"), and Deputy Connie Lilly ("Lilly" and collectively, the "County Defendants"); and medical defendants Nurse Shirley Rabius ("Rabius"), Dr. Khan, and Correct Care Solutions, LLC ("CCS"). The County Defendants filed a motion to dismiss (Doc. No. 32), and Rabius and CCS filed a motion for summary judgment (Doc. No. 59). Dr. Khan has not been served and has not appeared in this case. The Court has carefully considered the pleadings, pending motions, responses, reply, evidence in the record for the summary judgment motion, and the applicable law and concludes as follows.

## I.    BACKGROUND

Estrada alleges that prior to October 27, 2018, he made several complaints against fellow inmate Mike Atkinson ("Atkinson") concerning continuous threats, racial comments, and extortion, but Jail Classification ignored his notification of conflicts. Doc. No. 10 at 4. Estrada further alleges that he filed several grievances regarding his fears of possible physical harm and requested to be separated from Atkinson, but Erivo, who responded to his grievances, denied them because Estrada raised non-grievable issues. *Id.* In particular, Estrada complained that Atkinson would: store food for days before heating and eating it, causing gnats and a bad odor in the dorm; extort people and threaten them regarding the use of the television and racial issues;

use the fresh wash cloths that were for cleaning the dorm to wipe off his sweat and then throw them back on the table, causing a sanitation issue; and dip the mop in the toilet and wipe it on the sink that they used for drinking water.  Doc. No. 19 at 8.  Estrada asserts that the sanitation issues constituted a threat and that Atkinson allegedly stated that the Mexicans needed to drink water from the side of the sink where he used the mop and if they drank from the other side he would "f**k them up."  *Id.* at 9.  Estrada also alleges that Atkinson said that if any of the Mexicans want to change the television channel, they would have to pay or watch the channel that the others had on.  *Id.*  Estrada claims that "[a]lthough I was born in the United States and am only half hispanic," Atkinson allegedly stated that "they should have killed all your people at the border, don't think because you['re] in jail that can't happen."  *Id.*  On October 26, 2018, in response to Estrada's grievances and complaints about conflicts in the dorm, Jail officials moved the inmate from bunk 20, who Estrada claims was Atkinson's "partner in threatening everyone and controlling the dorm," away from Atkinson and Estrada.  *Id.*  Estrada alleges that moving this other inmate created a reason for Atkinson to attack him the next day.  *Id.*

Estrada alleges that on October 27, 2018, Atkinson came into the dorm after recreation, wiped the sweat off his face with a towel, and threw the towel on the table where Estrada sat.  *Id.* Estrada told him that he needed to stop disrespecting everyone and pick up after himself.  *Id.* at 10.  Estrada got up from the table to file another grievance, but Atkinson stated that he does not take orders from a "damn Mexican" and asked Estrada "what are you going to do about it, snitch on me?"  *Id.*  Estrada alleges that Atkinson started swinging at him.  He claims that Atkinson punched him, slammed him on his back, and caused his head to hit a bench.  Doc. No. 10 at 5.

Estrada claims that immediately after the altercation with Atkinson, Defendants Owens and Pailes were the first officers to arrive on the scene to help Officer Serna.  Doc. No. 19 at 3.

Estrada alleges that Owens picked him up off the floor, handcuffed him, pushed him out of the dorm, and took him to administrative segregation or "lock-up." *Id.* Estrada claims that Owens and Pailes did not take him to the infirmary, but a nurse came to the 6th floor to look at his scrapes and bruises. *Id.* He discloses that he was not bleeding as a result of the altercation and was able to walk to segregation, but was in pain from the fight in his spine, leg, and ribs. *Id.* at 10. He alleges that Owens told the nurse who came to evaluate him that his breathing problems were the result of the adrenaline from the fight and that he was not hurt badly. *Id.* at 11. Estrada alleges that Pailes and Owens allowed Atkinson to receive adequate medical care by allowing him to go to the infirmary but that Estrada was sent to administrative segregation and only received a visit from the nurse. He also complains that Pailes and Owens ordered him to be placed in lock-up, whereas Atkinson was allowed to remain in the dorm without punishment prior to a disciplinary hearing. Doc. No. 10 at 6. He alleges that he remained in lock-up for about 16 days, some of which was served before he had a hearing in his disciplinary case. Doc. No. 19 at 11. He claims that Sheriff Nehls's policy of placing inmates in segregation prior to conviction on disciplinary charges violated his due process rights under the Fourteenth Amendment. *Id.* at 2.

Estrada alleges further that while he was in lock-up, Pailes searched his property and confiscated his second mattress that the medical department issued him to help with a pre-existing back injury from being run over by a vehicle in 2012. Doc. No. 19 at 3. He claims that he subsequently asked Rabius for another mat, but that she refused and commented that if he could fight, he was not in a lot of pain and did not need another mattress or more pain medication. *Id.* at 4-5. He asserts that Rabius's refusal to provide him a second mattress violated his rights under the Eighth and Fourteenth Amendments. *Id.* He further alleges that

Rabius's refusal to allow him to see a "licensed medical doctor" when he requested one violated his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* ("ADA"). *Id.* at 5. He also generally alleges that all defendants violated the ADA regarding his treatment at the Jail. *Id.* at 6.

Estrada further alleges that, while he was in lock-up from October 27 to about November 12, 2018, the kiosk for filing grievances, sick calls, and requests for correspondence materials and hygiene products was not working properly to accept his requests. He alleges that Sheriff Nehls implemented a "policy" not to repair the kiosk and that Nehls "is legally responsible for the overall operation of the Fort Bend County Sheriff's Office." Doc. No. 19 at 2. He alleges that the lack of a working kiosk violated his constitutional rights because he was not able to petition for redress of grievances, obtain necessary supplies, or seek medical attention for the 16 days he was in segregation. *Id.*

Estrada alleges that at his disciplinary hearing on November 2, 2018, Defendant Lilly made biased accusations and a prejudgment statement insinuating that if he was the one placed in administrative segregation, he must be the one the officers found to be guilty of starting the problem. *Id.* at 5; Doc. No. 10 at 6. He alleges that Lilly's comments and lack of an adequate investigation violated his due process and equal protection rights. Doc. No. 19 at 5. Estrada claims that on November 5, 2018, Lilly and Erivo signed off on a disciplinary report stating that they interviewed witnesses, found Estrada guilty of assault, and sentenced him to 15 days in lock-up without completing the disciplinary hearing process. *Id.*; Doc. No. 10 at 7. Estrada alleges that the disciplinary conviction report is false and biased because the only person interviewed regarding his disciplinary case was a friend of Atkinson's. Doc. No. 10 at 7.

He further alleges that medical defendants Dr. Khan, Rabius, and CCS were medically

negligent and deliberately indifferent to his medical needs in the aftermath of the October 27, 2018 incident.  Although he reports that a nurse came to his floor to check on him right after the incident, he alleges that the evaluation was inadequate because she just checked for scratches and bruises and left.  The medical records reflect that Paula Quinn, RN, was the nurse who came to check on him on October 27, 2018.  Doc. No. 59-8 (APP 529).[3]  He alleges that, in response to a request from the staff for medical attention for him, Rabius came to lock-up and denied him medical care by discontinuing his pain medication (Meloxicam) and denying his request to see a medical doctor instead of a nurse.  Estrada's medical records reflect that the request from staff (which was notated as a "sick call request") occurred on November 6, 2018, and Rabius saw him the next day on November 7, 2018.  APP 354.[4]  The medical records also indicate that Estrada stated that he did not want to see a nurse and wanted to talk to Dr. Khan.  *Id.*  The summary judgment evidence reflects that on November 7, 2018, Nurse Practitioner Dawn Simons entered the following notation on Estrada's medical records: "do not reorder meloxicam [] has been on this med since April 2018."  *Id.*  The medical records further reflect that Rabius also entered a note that Estrada's Meloxicam prescription expired that day (November 7, 2018), that Estrada had been on Meloxicam since April 2018, and that Estrada was referred to Dr. Khan for evaluation.  *Id.*  Estrada's medical records show that he received a Meloxicam dose on the evening of November 7, 2018 after his appointment with Rabius.  *See* APP 192.

The medical records further reflect that on November 13, 2018, Estrada saw Dr. Khan.  He claims that Dr. Khan did not provide him with x-rays or properly examine him and told him

---

[3] The medical defendants submit Estrada's medical records as competent summary judgment evidence. *See* Doc. Nos. 59-1 – 59-8 (*hereinafter* "APP" or "Appendix").  The pagination for the Appendix tracks the Bates stamped numbering at the bottom of the referenced page, while the pagination following "Doc. No. ----" tracks the pagination stamped by the CM-ECF system at the top of the referenced page.

[4] Estrada disputes that he submitted a "sick call request" and explains that his medical need was relayed by a staff member to the medical department after he complained to the shift officer about his medical need. *See* Doc. No. 65 at 3-4.

that he could not be in too much pain and did not need extra medication if he was well enough to start fights.   Doc. No. 10 at 12.   The medical records reflect that Dr. Khan continued Estrada on the Meloxicam, and, with the exception of November 8 through November 11, 2018, Estrada received his daily dose of Meloxicam from October 27, 2018 through November 7, 2018 while in lock up (twelve doses) and from November 12, 2018 to December 13, 2018.   *See* APP 190-196.

Estrada also generally alleges that CCS is responsible for the actions of Dr. Khan and Nurse Rabius and failed to supervise its staff to ensure proper medical treatment.   Doc. No. 10 at 11.   He claims that CCS did not intervene on his behalf regarding the grievances he wrote for his lack of medical care from October 27, 2018 through January 2019 regarding his medication and the extra mattress.   *Id.* at 12.   He also alleges that CCS is legally responsible for the same constitutional violations as Rabius and Dr. Khan.   Doc. No 19 at 7.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Rule 12(b) (6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted.   FED. R. CIV. P. 12(b)(6).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation omitted).   A plaintiff must allege sufficient facts to state a claim to relief that is "plausible" on its face.   *Id.* at 569. A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

Pleadings filed by *pro se* litigants must be construed under a less stringent standard of review.   *See Haines v. Kerner,* 404 U.S. 519 (1972).   Under this standard, a court liberally construes a document filed *pro se.   Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003).

### B.   Motion for Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56.   The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.   *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).   Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."   *Freeman v. Tex. Dep't of Crim.*

*Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted).

In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### C.   Qualified Immunity

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735 (citation omitted). "When confronted with a qualified immunity defense at the pleading stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Waller*, 922 F.3d at 599 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).

## III.   DISCUSSION

### A.   Motion to Dismiss

The County Defendants move to dismiss, arguing that Estrada does not allege facts to state a claim for which relief may be granted and has not met his burden to overcome their entitlement to qualified immunity.  The claims against each County Defendant are considered in turn.

#### 1.  Sheriff Troy Nehls

A supervisory official like Sheriff Nehls is not liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins*, 828 F.2d at 304); *see also Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Thus, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted).

Estrada does not assert that Nehls was personally involved by affirmatively participating in acts that caused the alleged constitutional deprivation.  Instead, he claims that Nehls created a policy that placed inmates like him in administrative segregation in violation of his due process rights under the Fourteenth Amendment and a policy not to repair the kiosk in the administrative

segregation area for grievances and other requests.

Regarding the policy to place those charged with a disciplinary infraction in administrative segregation before a hearing, placement in administrative segregation, even when such placement is based on false information, does not implicate a liberty interest. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam) (holding that "administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest"). Further, "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim" because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker*, 73 F.3d 612, 612–613 (5th Cir. 1996).  In that regard, the Supreme Court held that a plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  Even in the pre-trial detainee context, the Fifth Circuit accords "the widest possible deference" in classifying inmates as necessary "'to maintain security and preserve internal order.'"  *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (per curiam) (quoting *Hernandez v. Velasquez*, 522 F.3d 566, 561 (5th Cir. 2008)).

Here, Estrada had just been involved in a fight with another inmate, so segregating Estrada – whether for his safety or the safety of others – was reasonably related to a legitimate interest in maintaining and preserving internal order.  *Id.*  Moreover, the pleadings reflect that Estrada received an informal hearing six days after being placed in administrative segregation; he cannot show a constitutional violation under these facts.  *See Luken*, 71 F.3d at 194 (citing *Rodriguez v. Phillips*, 66 F.3d 470, 480 (2d Cir. 1995), for the proposition that "the prisoner received due process where informal review occurs within a reasonable time after placement in

administrative segregation" and finding claim frivolous where the plaintiff had received a hearing within ten days). Therefore, assuming that Nehls implemented a policy to place inmates charged with disciplinary infractions in administrative segregation before their hearings, Estrada does not state a claim for which relief may be granted because he does not show that this policy caused a violation of his constitutional rights.

Likewise, he does not show a constitutional violation in connection with the alleged policy concerning the failure to repair the kiosk while he was in administrative segregation from October 27 to about November 12, 2018. First, Estrada's allegations against Nehls regarding this policy are conclusory. Although he labels the failure to repair a kiosk a "policy" for which Nehls is responsible, he does not plead facts to show that this claim is based on anything more than a *respondeat superior* tort claim for negligence, which does not support a claim under section 1983. *See Thompkins*, 828 F.2d at 303. Second, other than his conclusory assertion that Nehls was aware of this policy not to repair the kiosk, Estrada does not plead facts to show that Nehls had actual or constructive knowledge about the problem with the kiosk and that the lack of a working kiosk would obviously violate the constitutional rights of inmates such that he implemented a policy in deliberate indifference to Estrada's constitutional rights. *See Porter*, 659 F.3d at 446.

Further, Estrada's pleadings contradict his contention that the lack of a working kiosk prevented him from making requests to the staff. He alleges that staff called medical at his request while he was in administrative segregation, and he attended a disciplinary hearing on November 2, 2018 where he had access to staff. In addition, his pleadings reflect that he was released from administrative segregation on November 11 or 12, 2018, fewer than 15 days after his disciplinary conviction issued on November 5, 2018; his pleadings do not reflect that he

could not have timely appealed that conviction after he was released from administrative segregation with several days remaining to appeal. Even assuming that failing to repair a kiosk amounted to a "policy," Estrada does not plead facts to show that Nehls implemented this policy in deliberate indifference to his constitutional rights or that the policy itself caused a violation of his federal rights. Therefore, he fails to state a claim for which relief may be granted against Nehls.

In addition, Estrada does not overcome Nehls's entitlement to qualified immunity. As explained above, he does not plead facts to show that Nehls's policies caused a constitutional violation. *See al-Kidd*, 563 U.S. at 735, 741. Further, Estrada does not cite, and the Court has not found, binding precedent indicating that failing to repair a kiosk used for submitting inmate requests and grievances or placing an inmate charged with a disciplinary offense in segregation for a limited period violate clearly established federal law. *Id.* Therefore, Estrada does not meet his burden on Nehls's claim for qualified immunity, and the claims against Nehls are subject to dismissal.

## 2. Owens and Pailes

Estrada alleges that Owens and Pailes were the first officers on the scene after the fight. He alleges that they both played a part in taking him to segregation and in allowing adequate medical treatment for Atkinson but denying him the same treatment. He also discloses, however, that a nurse came to his floor that same day and checked his bruises and scratches. He alleges that the nurse did not stay long because Owens told her that Estrada's breathing difficulties were due to the adrenaline because of the fight. Estrada contends that Owens and Pailes acted with deliberate indifference to his medical needs in connection with the October 27, 2018 incident and violated his equal protection rights by treating Atkinson better than they treated him.

A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires a finding that the defendant "disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40. In the medical context, an inmate-plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citation and internal quotation marks omitted).

As noted, Estrada discloses that a nurse came to segregation to check on him the same day as the fight. According to Estrada, Owens and Pailes arrived on the scene at the dorm after the fight. According to Estrada, he was not bleeding, was able to walk, and had no visible injuries although he claims he was in pain. Estrada fails to show that either Owens or Pailes was aware of facts from which an inference could be made that he required more than the medical care he was provided that day from the nurse who checked on him in their presence. Further, there is no indication that either Owens or Pailes drew the inference that Estrada faced a substantial risk of serious harm and disregarded that risk. *Farmer*, 511 U.S. at 847. Although Estrada claims that Atkinson was allowed to go to the infirmary while he received brief care from a nurse on his floor, an inmate's disagreement with his medical treatment is insufficient to meet the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th

Cir. 2006); *Domino*, 239 F.3d at 756.

Likewise, Estrada's equal protection claim that he did not receive the same medical treatment as Atkinson fails because he pleads no facts to show that they were similarly situated regarding their injuries and their subsequent need for medical treatment. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990) (affirming denial of general equal protection claim that some inmates received better medical care than plaintiff); *see also Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (holding that plaintiff's equal protection claim was frivolous where prisoners were not similarly situated). Therefore, Estrada fails to show that either Owens or Pailes violated his constitutional rights in connection with their response to the October 27, 2018 fight regarding his medical care.

In addition, Estrada does not overcome either Owens's or Pailes's assertion of qualified immunity. He does not show that it is clearly established that, given the circumstances of this case—where the officers had a nurse check on Estrada's injuries right after the fight and Estrada had no visible injuries and was able to walk—would constitute a violation of Estrada's clearly established constitutional rights. Therefore, the claims must be dismissed against Owens and Pailes.

### 3. Erivo—Failure to Protect

Estrada alleges that Erivo was aware of the conflict he had with Atkinson and his request to move into different housing and failed to protect him, and then later participated in his disciplinary conviction without properly investigating the case. Concerning Estrada's claim that Erivo did not resolve grievances to his satisfaction, he states no constitutional claim. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (a prisoner-plaintiff has no constitutional right to have his grievances resolved to his satisfaction). To the extent that he claims that Erivo was

aware of his conflict with Atkinson, Estrada does not plead facts to show that Erivo was aware of facts from which an inference could be made that Estrada faced a substantial risk of serious harm from Atkinson and that Erivo drew that inference and disregarded the risk. *Farmer*, 511 U.S. at 847. Rather, the pleadings indicate that officials at the Jail took some reasonable steps to address the problem by moving Atkinson's "partner" in bunk 20 who allegedly assisted him in causing trouble in the dorm. *See id.* at 844 (holding that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free of liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Therefore, Estrada's failure-to-protect claim against Erivo is subject to dismissal. In addition, because Estrada does not show that Erivo violated his constitutional rights, he cannot overcome Erivo's entitlement to qualified immunity for this claim. *al-Kidd*, 563 U.S. at 735, 741.

### 4. Lilly and Erivo – Disciplinary Proceedings

Estrada sues Lilly and Erivo in connection with his disciplinary proceedings. He alleges that at the November 2, 2018 disciplinary hearing, Lilly commented that if Estrada was the one placed in segregation, he must be the one the detention officers considered guilty of starting the problem. He also complains that Lilly and Erivo did not allow witness testimony on Estrada's behalf and found him guilty without a proper investigation. He further contends his proceeding was based on the testimony of one witness who is Atkinson's friend and was therefore biased.

As discussed above, Estrada does not have a liberty interest regarding being placed in administrative segregation for a short period and does not plead facts to show that extraordinary circumstances existed in connection with that segregation. Further, he does not plead facts to show that his disciplinary conviction implicated any other liberty interest. Therefore, he cannot

demonstrate a violation of his due process rights in connection with his disciplinary proceedings. *See Sandin*, 515 U.S. at 486; *supra* § III.A.1.

Even if Estrada had alleged facts to implicate a liberty interest in connection with his disciplinary proceeding, the Fifth Circuit has noted that "'prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts.'" *Frank v. Larpenter*, 234 F.3d 706 (5th Cir. 2000) (unpublished op.) (holding that the hearing officer on a panel for a pre-trial detainee was not biased even though the plaintiff had previously filed a complaint against him and the case had settled) (quoting *Allen v. Cuomo*, 100 F.3d 253, 259 (2nd Cir. 1996)). "[T]he extent of impartiality required in prison disciplinary proceedings must be gauged with due regard to the fact that they 'take place in a closed, tightly controlled environment' in which '[g]uards and inmates co-exist in direct and intimate contact.'" *Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1984) (quoting *Wolff v. McDonell*, 418 U.S. 539, 560 (1974)). To prevail on a claim of adjudicator bias, an inmate must show that the hearing officer's involvement presented "such a hazard of arbitrary decision making that it should be held violative of due process of law." *Wolff*, 418 U.S. at 560.

Here, Estrada claims that Lilly made biased comments because she noted that he had been placed in administrative segregation, which to her was some indication that the detention officers thought he was guilty of starting the fight. Taking the allegation of what Lilly stated as true, there is no indication that Lilly's involvement on the hearing panel posed such a "hazard of arbitrary decision making" to constitute a violation of due process. *Id.*

Defendants contend that it is not clearly established that detention officers must interview every witness requested by the inmate in the context of a disciplinary hearing. They further contend that Estrada had no liberty interest in being free from his limited placement in

administrative segregation.   Estrada does not point to clearly established law to show that the procedure used in his disciplinary case violated his due process rights, and, therefore, does not meet his burden to overcome either Lilly's or Erivo's assertion of qualified immunity in connection with his disciplinary proceedings.   Accordingly, the claims against Erivo and Lilly must be dismissed.

### B.      Motion for Summary Judgment

Rabius and CCS move for summary judgment, contending that Estrada does not raise a fact issue on his medical deliberate indifference claims.   In support of their motion, they attach medical records for the relevant time period at the Jail, Rabius's Declaration, and a July 16, 2019 Letter from the Texas Commission on Jail Standards.   *See* Appendix (APP), Doc. Nos. 59-1 – 59-8.   Estrada filed a response in opposition to the motion (Doc. No. 65), and Rabius and CCS filed a reply (Doc. No. 66).

A prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors.   *Estelle*, 429 U.S. at 104.   The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of mankind."   *Id.* at 104–06 (quotation marks omitted).   A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert*, 463 F.3d at 345–46.   To prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to

the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris*, 198 F.3d at 159. An incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment are insufficient to meet the standard for deliberate indifference in the absence of other exceptional circumstances. *Domino*, 239 F.3d at 756; *Gobert*, 463 F.3d at 346.  A prisoner-plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770.

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care.").

### 1.  Shirley Rabius, LVN

Estrada contends that Rabius acted in deliberate indifference to his medical needs when she "discontinued" his medication and refused to renew his pass for an extra mattress that had been confiscated after his fight with Atkinson in late October 2018.  However, Estrada also alleges that Rabius has no authority regarding prescribing medication or the decision to issue an extra mattress pass.  He also alleges that it was Sergeant Pailes, and not Rabius, who confiscated his extra mattress after the altercation in late October 2018. *See* Doc. No. 19 at 3.

It is undisputed that when Rabius came to his cell in response to his out-cry to the shift officer for a medical visit that Estrada told Rabius that he wanted Dr. Khan and did not want to see her. The medical records show that this visit occurred on November 7, 2018 and, contrary to Estrada's contentions, the medical records show that his Meloxicam prescription was expiring that day. APP 529.[5] Further, as Defendants point out, the medical records reflect that Nurse Practitioner Dawn Simons made the notation that his prescription was due to expire on November 7, 2018, which was echoed in Rabius's notes that same day. APP 529. Estrada does not raise a fact issue that Rabius "discontinued" his medication where the medical records indicate that his prescription was due to expire that day.

Regarding Estrada's request for a second mattress, Rabius claims she responded to his request on November 30, 2018 but that a review of his records showed that officers removed his extra mattress on October 29, 2018 because he had altered his pass and it had expired in July 2018. APP 559. Rabius further states that "[d]ue to the alteration after the order for a mattress had expired, I wanted to confer with another practitioner, or a physician, regarding whether Estrada needed the mattress before issuing another pass to him which took several days." *Id.* Although Estrada disputes that his pass expired and argues that Rabius has no authority to prescribe medicine or medical devices, he also contends that Rabius should have issued him another pass for an extra mattress on November 30, 2018 at his medical visit.

---

[5] In that regard, a careful review of the medical records reflects that on October 1, 2018, Dr. Khan prescribed Meloxicam to Estrada. APP 550. However, that October 1, 2018 prescription, which began on the morning of October 2, 2018, was "discontinued," on October 9, 2018, and that another 30-day prescription for Meloxicam was ordered. APP 130. The medical records reflect that, with the exception of the morning of October 6, 2018, Estrada received morning doses of Meloxicam from October 2 through October 9, 2018, and then started receiving evening doses every evening for thirty doses from October 9, 2018 up to and including November 7, 2018. APP 186-191. Thus, he received 30 doses between the evening of October 9, 2018, and November 7, 2018, inclusive. *Id.*

As Defendants point out, Estrada alleges that Pailes, and not Rabius, confiscated his extra mattress during the search after he was sent to administrative segregation for fighting.  Doc. No. 19 at 4.  The medical records establish that Nurse Practitioner Simons re-issued the pass for an extra mattress on December 6, 2018, one week after Estrada requested an extra mattress pass from Rabius on November 30, 2018.

Although Estrada complains that Rabius did not have the licensure to treat him properly and could not prescribe medications or medical equipment, he submits no evidence to raise a fact issue that Rabius "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770.  Rather, his allegations reflect that he disagreed with the medical care he received or was offered.   Estrada's dissatisfaction or disagreement with the medical treatment he received, or that the treatment was negligent or the result of medical malpractice, does not state a claim for deliberate indifference in violation of the Eighth Amendment.   *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (assertions of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim); *Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (holding that being prescribed the wrong medication did "not support a finding of deliberate indifference under the Eighth Amendment"); *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir.1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" was insufficient to show Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir.1979) (finding "[m]ere negligence, neglect, or medical malpractice is insufficient" to show Eighth Amendment violation).

Estrada's medical records reflect that he received daily medication for his medical conditions on a regular basis with few exceptions. Although Estrada challenges some aspects of his medical records, he does not contend that the record reflecting that he received medications each day was erroneous, except to question whether his Meloxicam was due to expire on November 7, 2018 or November 9, 2018. The medical records show that Estrada received Meloxicam for the first twelve days he was in lock-up, up to and including November 7, 2018. APP 189-191.

To the extent that Estrada claims that Rabius delayed his medication or the return of his second mattress, he does not submit evidence to show that Rabius was "deliberately indifferent to a serious medical need *and* [her] indifference resulted in substantial harm." *McCoy v. Pace*, 493 F. App'x 494, 495 (5th Cir. 2012) (emphasis in original) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 192 (5th Cir. 1993)). In that connection, Estrada does not contend that any delay resulted in physical injury but instead alleges that the delay resulted in unspecified "psychological torture." Doc. No. 65 at 5. Conclusory and vague allegations of harm, like Estrada asserts here, do not suffice to raise a fact issue to defeat a summary judgment motion. *Freeman,* 369 F.3d at 860 (noting that a nonmovant "cannot satisfy [his burden on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence").

Estrada does not raise a fact issue that Rabius caused the interruption in receiving his Meloxicam, that she was responsible for confiscating his mattress, or that she had the authority to issue him a new pass for an extra mattress without first consulting a doctor or nurse practitioner. Further, he does not raise a fact issue that the short delay in receiving his medication between November 8, 2018 and November 12, 2018, or the one-week delay between

notifying Rabius on November 30, 2018 of his request for an extra mattress and Nurse Practitioner Simons's issuing him a pass for an extra mattress on December 6, 2018 caused him substantial harm. Nor does he raise a fact issue that Rabius acted with deliberate indifference to his medical needs in connection with his medical care. Estrada's medical records rebut his claims that he did not receive constitutionally adequate medical care while he was at the Jail. *See Brauner*, 793 F.3d at 500; *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Because Estrada does not raise a fact issue that Rabius was deliberately indifferent to his medical needs, Rabius is entitled to summary judgment on those claims.

Likewise, to the extent that Estrada claims that Rabius violated the ADA by her refusal to allow him to see a "licensed medical doctor" when he requested one, the Fifth Circuit has noted: "The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 G.3d 246, 249 (7th Cir. 1996)). There is no evidence that Rabius's alleged improper action of not allowing Estrada to see a medical doctor instead of her had any connection to his alleged disability, nor is there evidence to raise a fact issue that he was treated differently because of a disability. *See id.* Further, he submits no evidence to raise a fact issue that Rabius (or any defendant, for that matter) intentionally discriminated against him on the basis of a disability. *See Smith v. Harris County*, 956 F.3d 311, 317-318 (5th Cir. 2020) (holding that a plaintiff must establish intentional discrimination to obtain compensatory damages for an ADA claim).[6]

---

[6] Estrada's one-sentence, general allegation that "all defendants" violated the ADA (Doc. No. 19 at 7) is conclusory and, accordingly, does not state a claim for which relief may be granted against any other defendant. *See United States ex rel. Willard,* 336 F.3d at 379 (noting that conclusory statements and unsubstantiated factual deductions do not suffice to defeat a motion to dismiss).

In addition, Rabius correctly notes that there is no individual liability for claims under the ADA. *See Lolla v. Baker*, 196 F.3d 603, 608-09 (5th Cir. 1999); *see also Decker v. Dunbar*, 633 F. Supp. 2d 317, 357 (E.D. Tex. 2008), *aff'd* 358 F. Appx. 509, 2009 WL 5095139 (5th Cir. 2009), *cert. denied*, 562 U.S. 848 (2010). For the foregoing reasons, Rabius is entitled to summary judgment on Estrada's claims against her.

### 2.  CCS

Likewise, Estrada does not raise a fact issue that CCS violated his rights to adequate medical care. As CCS points out, even if one of its employees had violated Estrada's rights, which Estrada has not shown, it may not be held responsible under section 1983 under a theory of *respondeat superior*. *See Olivas v. Corr. Corp. of America*, 215 F. App'x 332, 333 (5th Cir. 2007) (per curiam) (not selected for publication). Further, as discussed, the medical records reflect that Estrada received medical care regularly and medications daily to address his needs. *See Brauner*, 793 F.3d at 500; *Banuelos*, 41 F.3d at 235 (holding that medical records can refute a claim of medical deliberate indifference). Estrada does not raise a fact issue to show that CCS was deliberately indifferent to his medical needs or that it implemented a policy that violated his rights regarding constitutionally adequate medical care. *See id.* Therefore, CCS is entitled to summary judgment on Estrada's claim.

### C.  Dr. Khan

Dr. Khan has not been served and has not appeared in this action. A review of the pleadings reflects that the claims against Dr. Khan are subject to dismissal under 28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B)(ii) for the reasons that follow.

Broadly construed, Estrada claims that Dr. Khan did not provide him with adequate medical care in connection with his pain from the October 27, 2018 incident. He alleges that he

saw Dr. Khan for a consultation on November 13, 2018 and that Dr. Khan did not do x-rays, examine him properly, or give him more pain medication or an extra mattress. However, Estrada also states that Dr. Khan renewed his pain medication during the visit. Although Estrada did not feel that he received all of the medical procedures he hoped to obtain on his medical visit, he does not plead facts to show that Dr. Khan "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770. At most, his allegations reflect that he disagreed with Dr. Khan's assessment and conclusion that x-rays, additional pain medication, or an extra mattress were not medically necessary at that time. Estrada's pleadings reflect that Dr. Khan prescribed him pain medication but that it was only for one week. Doc. No. 19 at 7. As explained above, Estrada's dissatisfaction or disagreement with the medical treatment he received, or that the treatment was negligent or the result of medical malpractice, does not state a claim for deliberate indifference to medical needs. *See Wilson*, 501 U.S. at 297; *Norton*, 122 F.3d at 291-92; *Varnado*, 920 F.2d at 320. Accordingly, Estrada's claims against Dr. Khan are subject to dismissal for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B)(ii).

## IV.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.   The Motion to Dismiss filed by the Fort Bend County Defendants (Doc. No. 32) is **GRANTED**, and all claims against Fort Bend County Sheriff Troy Nehls, Sergeant William Pailes, Deputy Chris Owens, Deputy Richard Erivo, and Deputy Connie Lilly are **DISMISSED WITH PREJUDICE**.

2.      The Motion for Summary Judgment filed by Nurse Shirley Rabius and Correct Care Solutions, LLC (Doc. No. 59) is **GRANTED**, and all claims against them are **DISMISSED WITH PREJUDICE**.

3.      The claims against Dr. Khan are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B)(ii) for failure to state a claim for which relief may be granted.

4.      Estrada's Motion for Appointment of Counsel (Doc. No. 63) is **DENIED** for the reasons previously stated in the Court's October 7, 2020 Order (Doc. No. 52). *See Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007) (explaining that there is no automatic right to appointment of counsel in civil rights cases); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

5.      Estrada's "Request for the Court to Accept the Plaintiff's Delayed Response to the Defendants' Motion for Summary Judgment" (Doc. No. 65 at 2), which the Court construes as a motion for extension of time to submit his response, is **GRANTED**, insofar as the time to file the response is extended to **February 25, 2021**.

6.      All other pending motions, if any, are **DENIED as MOOT**.

The Clerk shall enter this Order, providing a copy to all parties of record.

SIGNED at Houston, Texas, this _____9th_____ day of March 2021.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE